IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

MICHAEL ANDERSON,                    )
                                     )
              Movant,                )
                                     )
      vs.                            ) No. 1:21 CV 23 SNLJ
                                     )
UNITED STATES OF AMERICA,            )
                                     )
              Respondent.            )

## MEMORANDUM AND ORDER

This is a Motion under 28 U.S.C. § 2255 to vacate set aside or correct sentence.

### FACTS

**District Court Procedural History.**

On September 21, 2017, the grand jury indicted Anderson on two counts: (1) Making a Material False Statement in Connection With the Attempted Acquisition of a Firearm, in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a)(2) (Count I); (2) Making a False Statement in Connection with the Attempted Acquisition of a Firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A) (Count II). (DCD 1) The statutory maximum punishment for Count I is ten years and the maximum punishment for Count II is five years. (Case Number 1:17 CR 84 SNLJ; DCD 1)

After waiving his right to file pre-trial motions, Anderson entered into a written Plea Agreement with the Government. (DCD 37) Anderson agreed to plead guilty to Count I of the Indictment in exchange for the Government moving to dismiss Count II at the time of sentencing. (Case Number 1:17 CR 84 SNLJ; DCD 37, pp. 1-5)

1

On December 13, 2017, Anderson appeared before this Court for a plea hearing.

(Case Number 1:17 CR 84 SNLJ; DCD 36, 71) During that hearing, Anderson admitted he

attempted to acquire a firearm as described above. This Court accepted Anderson's written

plea agreement (DCD 37) and questioned Anderson as to his understanding as the possible

length of his sentence:

| | |
|---|---|
| Court: | And what you also need to know about the guidelines, though, is that whatever they turn out to be the guidelines are simply guidelines. And by that I mean I can impose a sentence against you that's above the guidelines or a sentence that's below the guidelines. Do you understand that too? |
| Anderson: | Yes. |
| Court: page | What I am bound by is the statutory penalty. That's paragraph 5 on |
| | 4. For this offense it's imprisonment of up to 10 years, a fine of up to $250,000 or a combination of imprisonment and fine. And after your release, there would be a period of supervised release of up to three years: Do you understand that too? |
| Anderson: | Yes. |
| Court: | Now, I'm going to consider the full range of punishment of up to 10 years, and the sentence to be imposed will be in my discretion within that range of punishment. Do you understand? |
| Anderson: | Uh-huh. |
| Court: | And so I'll ask you then with that in mind has anyone told you or promised you what sentence you'll receive in the case? |
| Anderson: | No. |

(Case Number 1:17 CR 84 SNLJ; DCD 71, pp. 10-11)

A Presentence Investigation Report ("PSR") was prepared. That report

2

recommended Anderson's base offense level at 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A). In accordance with U.S.S.G. §3 E1.1(a), two levels were subtracted because Anderson clearly demonstrated acceptance of responsibility for the offense. Thus, Anderson's total offense level was 12. (Case Number 1:17 CR 84 SNLJ; PSR, ¶ 20-28)

Anderson was assessed four criminal history points, placing him in criminal history category III. (Case Number 1:17 CR 84 SNLJ; PSR, ¶ 41) Based on a total offense level of 12 and a criminal history category of III, the advisory guideline imprisonment range was 15 to 21 months. (Case Number 1:17 CR 84 SNLJ; PSR, ¶ 73)

On February 12, 2018, the Government filed its request that the district court impose an upward variance from the applicable guideline range. The Government outlined the conduct that would support the upward variance and requested a final sentence of imprisonment of 120 months. (Case Number 1:17 CR 84 SNLJ; DCD 43) On March 14, 2018, Anderson's attorney filed his own Sentencing Memorandum. (Case Number 1:17 CR 84 SNLJ; DCD 52)

On March 21, 2018, the Court held a sentencing hearing and addressed the Government's motion for an upward variance. The Government presented four witnesses who testified about Anderson's involvement in three uncharged shooting incidents.

Alexis Williams testified that, on November 18, 2016, she was sitting in her vehicle on a parking lot located at 608 Boxwood, Cape Girardeau, Missouri. (Case Number 1:17 CR 84 SNLJ; Sent. Tr., p. 8) At the time, Williams was 17 years old. (*Id.* at p. 19) Williams was seated in the driver's seat and Shaniya Hamilton, Devontae Nunley-Bell, and Felawn Smith were also in the vehicle. (*Id.* at pp. 8-10) The group

3

smoked marijuana, drank beer and talked for a couple of hours. (*Id.* at pp. 11, 20, 21)

Williams also had taken some Percocet and Zanax, which had been prescribed for her.

(*Id.* at p. 23) After Nunley-Bell returned to the vehicle after using one of the apartment's

bathrooms, Nunley-Bell told her that he had a firearm. (*Id.* at pp. 11, 12) Williams told

Nunley-Bell to put the firearm on the console or leave the car. (*Id.* at pp. 12, 22, 23)

Williams described the firearm as a .40 caliber Smith & Wesson pistol. She wanted the

pistol to be in view of everyone in the car. (*Id.* at p. 12) Nunley-Bell operated the pistol

to display a round in the chamber. (*Id.* at p. 13)

While talking, Williams observed a white Chevrolet Impala enter the parking lot,

park, and then quickly drive away. (*Id.* at pp. 13, 14) The car was distinctive because

three of the four tires were small spare tires. (*Id.* at p. 14) About ten to fifteen minutes

after the white Impala left the parking lot, Williams observed four individuals

approaching her vehicle, two from the right and two from the left. (*Id.* at pp. 14, 15)

The individuals had their faces covered with masks. (*Id.* at p. 18) One individual to her

left was carrying a rifle with the barrel so close to Williams' car that she could have

reached out and touched it if her window had been down. (*Id.* at p. 16)

After hearing one or two shots and Nunley-Bell yelling for everyone in the

vehicle to get down, Williams grabbed the pistol from the console and fired two shots to

her left and two shots to her right, continuing to fire to her left until all the rounds in the

firearm were spent. (*Id.* at pp. 15, 18) After discovering Nunley-Bell had been struck in

the left arm with a round, Williams drove to a nearby hospital. (*Id.* at p. 17)

Next, Cape Girardeau Police Officer Amanda Rhodes testified she collected

4

evidence and photographed the scene at 608 Boxwood. (*Id.* at p. 33-44) During her investigation, Officer Rhodes discovered a Del-Ton AR-15 style semi-automatic rifle bearing serial number S107236 on the ground near where Williams had parked her car. The rifle had originally been purchased by Anderson on October 16, 2016. (*Id.* at p. 70-71) The rifle had one round in the chamber and 30 rounds loaded in the magazine. (*Id.* at p. 38) Officer Rhodes also seized and photographed Anderson's clothing after Anderson arrived at the St. Francis Medical Center Emergency Room for treatment for two gunshot wounds. (*Id.* at p. 43) A photograph of Anderson's shirt depicted a hole in the chest area with the presence of blood around the hole. (*Id.* at p. 44)

The third witness, Cape Girardeau Police Detective Joe Thomas testified that while interviewing Anderson at St. Francis Medical Center Emergency Room, he observed Anderson had sustained two gunshot wounds, one in the center of his chest and one in his left shoulder. (*Id.* at pp. 46-47) Additionally, Detective Thomas and Detective Hawkins measured the bullet removed from the back of Anderson's shoulder and discovered it was a .40-caliber bullet, which was the same caliber of ammunition that Williams used to shoot at her assailants. (*Id.* at p. 48, Furthermore, Detective Thomas reviewed video footage of the St. Francis Emergency Room entrance and witnessed Anderson exiting a white Impala and Nunley-Bell and Smith exiting Williams' vehicle a short time later. (*Id.* at pp. 54-56)

Cape Girardeau Police Lieutenant Jeff Bonham testified he interviewed Anderson on September 28, 2017. (*Id.* at p. 66) During the interview, Anderson stated he was present at Jimmy Walker's homicide. (*Id.* at p. 67) Anderson stated he was outside his

vehicle at Rhodes Gas Station on South Sprigg Street when an unidentified individual approached Walker's vehicle and began shooting. (*Id.* at p. 67) Anderson then stated he pulled out his own firearm and began shooting at the unidentified individual. (*Id.* at p. 67) The unidentified individual began to flee and Anderson continued firing until his firearm was empty. (*Id.* at p. 67) Anderson then drove to the nearby bridge and threw his firearm into the Mississippi River. (*Id.* at p. 69)

Additionally, Anderson stated he was present at the homicide of Quinton Combs, which occurred on November 15, 2015. (*Id.* at p. 68, 69) Anderson stated he encountered Combs while Combs appeared to be under the influence of drugs or alcohol. (*Id.* at p. 68) After words were exchanged between Combs and Anderson, Combs pulled out his firearm and began shooting in Anderson's direction. (*Id.* at p. 69) Anderson then pulled his firearm and began to shoot at Combs. Combs was struck by Anderson's bullets and ultimately died as a result of the gunshot wounds. (*Id.* at p. 69) Anderson stated that after shooting Combs, he went back to his residence and gave the firearm to his mother who got rid of it for him. (*Id.* at pp. 69, 70)

Lastly, Detective Bonham identified ATF Form 4473 (Govt. Exh. 2) as the form Anderson completed and signed when he purchased an AR-15 Del-Ton semi-automatic rifle that was found at the scene of the shooting that at occurred at 608 Boxwood. (*Id.* at pp. 70, 71)

After considering the testimony, this Court found, beyond a reasonable doubt, that Anderson aided and abetted in the ambush assault against Williams, Hamilton, Nunley-Bell, and Smith, (*Id.* at p. 75) This conduct was a significant aggravating circumstance

6

with regard to his sentencing. (*Id.* at p. 83)

Based on the sentencing hearing testimony, Anderson's statement, the PSR, the parties' sentencing memoranda and the statutory sentencing factors, this Court granted the Government's motion for an upward variance and imposed a sentence of 120 months. This Court specifically concluded that this sentence was based on the need to protect the public from Anderson's propensity to use firearms during criminal activity. (*Id.* at p. 83) After this Court announced its sentence, Anderson's attorney objected:

| | |
|---|---|
| Tilsen: | I have to make a record with respect to a number of things both with respect to the procedural correctness of the sentence imposed and with respect to the Court's consideration of failing to confer statutory requirements with respect to the sentence. |
| Court: | Mr. Tilsen, I considered every one of the factors under 3553(a) at great length as well as all the points that you made in your sentencing memorandum. |
| Tilsen: | My position, your Honor, is that imposing a statutory maximum sentence based on a presentation alleging that an assault was committed almost two years – a year and a half prior to the federal offense in which my client was shot, nobody was permanently injured, from guidelines of 15 to 40 – to 21 months is unreasonable, nor do you explain the reasonableness of the great difference between imposing a statutory maximum and that sentence. |
| Court: | Well, I think I did. It's because of the significantly aggravating circumstance of this assault. |

(Case Number 1:17 CR 84 SNLJ; Sent. Tr., pp. 86, 87)

**The Appeal.**

Anderson appealed his sentence, contending that his sentence was procedurally flawed and that his sentence was unreasonable. Anderson's sentence was affirmed by the Eighth Circuit Court of Appeals on February 22, 2019. (Case Number 18-1640) *United*

7

*States v. Anderson*, 926 F.3d 954 (8th Cir. 2019). Anderson applied for certiorari review by the United States Supreme Court. That review was denied on January 13, 2020.

**Petition for Post-Conviction Relief Pursuant to § 2255.**

On February 8, 2021, the United States District Court Clerk's office received a Section 2255 pleading from Anderson. Anderson filed his Petition under 28 U.S.C. 2255, asking that this Court set aside Anderson' conviction and sentence. (Case Number 1:21 CV 23 SNLJ; DCD 1)

**The Issue Raised:**

Anderson claims that the Government breached the terms of the parties' plea agreement, arguing that he was entitled to be sentenced at a Guideline range that reflects a three-level reduction for acceptance of responsibility. Anderson is incorrect in various ways, including the fact that he was only entitled to two levels off for acceptance; that his Presentence Investigation Report reflected a reduction in his Guideline range for those two levels off for acceptance; and that the parties' plea agreement contemplated that the Government could move for an upward variance and Anderson could move for a downward variance. Neither party was limited to a recommendation of sentence within any Guideline range or number of months. Anderson fails to recognize the provisions of his plea agreement or the fact that the agreement was fully complied with, and thus, he is not entitled to relief.

**APPLICABLE LAW**

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*; 644 F.3d 700, 704 (8th Cir. 2011)

8

(en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F.Supp. 3d 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)); *see also* R. GOVERNMING § 2255 PROCEEDINGS 1. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

## A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be

notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. See also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was

10

deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A defendant attempting to prove ineffective assistance of counsel within the context of a section 2255 pleading faces a heavy burden. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is

11

considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. *Lee v. United States*, -- U.S. --, 137 S.Ct. 1958, 1967 (2017).

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56 (citation omitted).

## DISCUSSION

Anderson's complaint in his Section 2255 petition is that he was improperly sentenced without being given a reduction of offense levels for acceptance of responsibility under U.S.S.G. Section 3E1.1. His recitation of the facts surrounding his plea is incorrect and his legal reasoning is without merit. This Court will break down each fact asserted by Anderson that he believes entitles him to relief, then refer to the

12

record to demonstrate that Anderson is mistaken.

**Failure to Raise Issue on Appeal:**

Anderson failed to raise this issue on appeal, and therefore cannot raise it for the

first time on Section 2255 review. His direct appeal raised three issues: (1) that the Court

committed procedural error in finding that Anderson had a propensity to use firearms in

criminal activity;

(2) that the Court committed procedural error by failing to adequately explain its sentence;
   and

(3) that Anderson's sentence was substantively unreasonable. *Anderson*, 926 F.3d at 957-
   58.

Anderson did not contend on direct appeal that his Guideline range was improperly

calculated.

"Habeas review is an extraordinary remedy and will not be allowed to do service

for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal citation

omitted); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("a collateral

challenge may not do service for an appeal"). Failing to raise such an issue is a

procedural default. To properly raise this issue, a movant most show both "cause" for

failure to raise the issue during direct appeal, and "actual prejudice" resulting from the

error or must be proceeding under the actual innocence exception. *See Bousley*, 523 U.S.

at 622; *Frady*, 456 U.S. at 167-68. As to "actual prejudice," a movant must show that

the error "worked to [his or her] actual and substantial disadvantage." *Frady*, 456 U.S.

at 170. This is a demanding standard; it requires the defendant to carry a burden

"significantly higher" than she would be required to satisfy on direct review under the

plain-error standard. *Frady*, 456 at 167.

Further, "[t]he cause and prejudice exception does not apply to nonconstitutional

or nonjurisdictional claims that could have been but were not raised on direct appeal.

Claims that demonstrate neither "a fundamental defect which inherently results in a

complete miscarriage of justice, nor an omission inconsistent with the rudimentary

demands of fair procedure" are not proper under § 2255. *Johnson*, 805 F.2d at 1287

(quoting *Hill*, 368 U.S. at 428 (1962)). "A petitioner simply cannot raise a

nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have

been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706

(8th Cir. 1994) (citations omitted).

Because Anderson failed to raise any issue as to the calculation of any reduction

of offense levels for acceptance of responsibility in his direct appeal, he has forfeited his

right to complain of this issue in this petition. This issue will be dismissed as forfeited

by Anderson by his failure to raise it on direct appeal.

Nonetheless, this Court will address the claims on their merits.

**Reduction in Offense Levels for Acceptance:**

Anderson mistakenly asserts he was entitled to three levels off for acceptance. He

makes this claim in his petition as follows:

> As set forth in his accompanying affidavit, Anderson entered into a
> written plea agreement with the government that did not stipulate to any
> offense levels, but that did promise Anderson a 3 Level reduction from the
> ultimate offense level as determined by the Court. Indeed, the government
> reiterated this promise to the Court, explaining to the Court "[w]e don't

14

> have an agreement on the offense levels or specific offense characteristics. We do have an agreement that Mr.
> Anderson will be entitled to *up to three levels off* for acceptance of responsibility as set forth on page 5 [of the plea agreement], and that's all."

(Anderson's Section 2255 Petition; DCD 1; p. 1) (Emphasis furnished)

The parties' written plea agreement contains the same representation, set out as follows: The parties agree that *up to three levels* should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. (Case Number 1:17 CR 84 SNLJ; Plea Agreement; p. 5) (Emphasis furnished)

As can be clearly seen from the written Plea Agreement and even Anderson's representations, there was no guarantee that three levels would be deducted for acceptance. There was never any agreement by the Government or by Anderson that exactly three levels would be taken off for his acceptance of responsibility. Rather, the amount of any reduction for acceptance of responsibility was left to the Court after determining Anderson's offense levels. The number of levels off for acceptance is governed by U.S.S.G. Section 3E1.1, as follows:

(a)   If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)   If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Section 3E1.1 sets out that a defendant is entitled to 2 levels off for acceptance if their offense levels are 15 or less, and three off for acceptance if the defendant's offense levels are 16 or greater. In order for Anderson to be entitled to three levels off for acceptance of responsibility, his offense levels would have to have been 16 or greater. They were not. Anderson's Presentence Investigation Report reflects that his offense levels were 14 and that he was entitled to only two levels off for acceptance. (Case Number 1:17 CR 84 SNLJ; PSR; DCD 48; pp. 5-6) This Court correctly calculated Anderson's reduction of levels for acceptance of responsibility and gave him the full amount off that it could. Clearly, Anderson was only entitled to two levels off for acceptance, both under the rules and his written plea agreement. The plea agreement was written in such a way that Anderson would get the maximum benefit for acceptance of responsibility, but only as that reduction complied with the provisions of the Sentencing Guidelines.

At the time that the parties entered into their plea agreement, they did not know exactly what Anderson's offense levels would be. That is why the plea agreement set out that the parties did not have any agreement as to the application of the Sentencing Guidelines, except for acceptance of responsibility, and left the determination of those Guideline levels to this Court at sentencing. (Case Number 1:17 CR 84 SNLJ; Plea Agreement; p. 5) Anderson got exactly what he bargained for. His attorney was not ineffective for not objecting to the imposition of two levels off for his acceptance of responsibility.

**Presumed Offense Levels:**

Anderson contends that this Court adopted a new offense level calculation when it imposed its sentence. His claim is stated as follows: "Apparently, in allowing the government's motion for an upward variance, the Court used CHC II, BOL 29 to reach the 120 months it imposed (this is the nearest level above Anderson's non-variance guidelines on the Sentencing Table), . . ." (Anderson's Section 2255 Petition; DCD 1; p. 1)

Anderson then believes he was entitled to a three-level reduction from this hypothetical Guideline range:

> The sole benefit promised to Anderson in the government's plea agreement is the 3 Level reduction from the ultimate offense level as determined by its upward variance. Because Anderson has been denied that benefit, he is serving 33 months more than the high-end of the proper advisory guideline range as determined by CHC II, BOL 26 - - the advisory range arrived at after deducting 3 points from the
> Court's apparent CHC II, BOL 29 variance used to impose the 120 month sentence. Because the Federal Defender failed to make this argument on appeal, and because any additional jailtime establishes prejudice under the Sixth Amendment, Anderson has been prejudiced by his lawyers unprofessional errors and he is entitled to be resentenced to 87 months.

(Anderson's Section 2255 Petition; DCD 1; p. 2)

Anderson's argument presupposes that the Court was required to arrive at a new Base Offense Level calculation that fit the sentence it was going to impose. There is no such requirement and this Court did not make any finding that it was using a substitute offense level amount for sentencing. This Court simply varied upward from Anderson's Guideline range.

Anderson couches his claims as arising because of his attorney providing

17

ineffective assistance of counsel. However, Anderson's Guideline offense levels were
correctly calculated. He received the exact number of levels as a reduction for acceptance
of responsibility that the Guidelines call for in his situation.

Anderson's attorney was not ineffective for failing to object to correctly calculated
Offense Levels, including the reduction for acceptance of responsibility. *See Rodriguez v.
United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless
argument cannot constitute ineffective assistance.").

The correct sentencing procedure in federal court has been well-established since
the holding in *Gall v. United States*, 552 U.S. 38 (2007). The *Gall* Court determined that
the district court is to first establish the correct Sentencing Guideline range, using the
defendant's offense levels and criminal history category. *Id.* at 49. Second, the district
court is to allow both parties to argue for what they believe to be an appropriate
sentence. *Id.* Then the district court is to consider whether a variance from the
sentencing range should be imposed. *Id.*

This Court followed correct sentencing procedure to the letter. First, this Court
established the Sentencing Guideline range:

Court:     The total offense level is 12. The criminal history category is III.
           The statute provides for up to 10 years in prison. The guidelines are
           15 months to 21 months and a supervised release period of 1 to 3
           years, and the defendant is ineligible for probation.
           Any objections?

Sorrell:   No, Your Honor.

Tilsen:    No, Your Honor.

Court:     The Court will adopt its additional findings the sentencing

18

guidelines calculations as stated.
The Court will now address the Government's motion for an
upward variance, which I understand is going to result in kind
of a mini trial.

Sorrell:     Yes.

Court:     All right. You all can have a seat

then. (Case Number 1:17 CR 84 SNLJ; Sent. Tr.; p. 5)

This Court then heard evidence on the Government's motion, arguments as to the

appropriate sentence, and them imposed its sentence. This District Court followed the

*Gall* sentencing procedures to the letter, first establishing a Guideline sentencing range

and then hearing evidence on the Government's motion and then argument for an

upward variance. In imposing the sentence, this Court stated that it was granting the

Government's motion for an upward variance as follows:

Court:     So pursuant to the Sentencing Reform Act of 1984 and the
provisions of Title 18, United States Code Section 3553(a) and all
the factors thereunder and for the reasons stated and by way of an
upward variance from the sentencing guidelines it's the judgement
and sentence of the Court that you, Michael Tryance Anderson, is
hereby committed to the custody of the Bureau of Prisons to be
imprisoned for a term of 120 months.

(Case Number 1:17 CR 84 SNLJ; Sent. Tr.; p. 83-84)

This Court did not establish any kind of new Guidelines range; it merely imposed

a larger sentence above the applicable Guideline range. There was no error in the Court's

sentencing procedure, nor any error in imposing such a sentence without re- calculating a

new Guideline range. The plea colloquy set out in the Statement of Facts above

demonstrates that Anderson knew full well that he was not promised any particular

19

sentence in his case. (Case Number 1:17 CR 84 SNLJ; DCD 71, pp. 10-11) And this Court warned Anderson that it would consider the entire range of punishment at sentencing, as reflected in the Statement of Facts. Anderson knew full well that he faced the entire ten year term of imprisonment for this conviction. The sentence that Anderson received was within that range he agreed he could receive.

For some reason, Anderson seems to believe that this Court was required to establish a new sentencing range if it awarded a variance. But a variance is a sentence above or below the *applicable* Guideline range. This Court uses the applicable Guideline range to determine if that range is too low or too high. This Court is not required to re-establish a new Guideline range if it imposes an upward variance and there is no case requiring the Court to do so. There was no error committed by the Court in its sentencing procedure. The Eighth Circuit has also decided that there was no error in the sentence imposed by the Court. *(See United States v. Anderson,* 926 F.3d 954 (8th Cir. 2019).

Furthermore, the parties' plea agreement contemplated that either side could request a variance. That agreement stated: "The parties agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court . . ." (Case Number 1:17 CR 84 SNLJ; Plea Agmt.; p. 2) In fact, Anderson recognizes this option in his petition when he stated that "It matters not at all, here, that the government moved for the upward variance. After all, it did not promise not to in its agreement." (Anderson's Section 2255 Petition; DCD 1; p. 3) It is obvious that the Government, as well as Anderson, had the ability to move the Court for a sentence

20

outside the Guideline range.

But Anderson believes that he was entitled to a reduction of the Guideline

range equivalent to three levels:

> But, the government did promise a 3 Level reduction for acceptance of
> responsibility, and Anderson did accept responsibility. Thus, after granting the
> variance and choosing a guideline range that got Anderson up to 120 months
> (apparently CHC II, BOL 29), the government should have guided the Court to
> then reduce the BOL by
> 3 Levels, instead of arguing for the maximum term without any acceptance of
> responsibility reduction. Had the government honored its own agreement,
> Anderson
> would have received the 3 Level reduction he bargained for, which
> would have reduced his BOL to 26, and the Court likely would have
> imposed the high-end 87 month term under CHC II, BOL 26.

(Anderson's Section 2255 Petition; DCD 1; p. 3)

Anderson's complete argument is based on (1) his contention that he was entitled

to a three level reduction for acceptance of responsibility, and (2) that the Court was

required to impose a sentence that accommodated a three level reduction from whatever

Guideline range that would include a 120 month sentence. Anderson is mistaken on both

issues. As to the first issue, Anderson received a two level reduction of offense levels for

acceptance of responsibility, which was all he was entitled to under the Guidelines. As to

the second issue, there was no agreement that the Government was barred from asking

for a statutory maximum sentence and no agreement that the Government was required

to reduce its sentencing request by any hypothetical offense levels. The specific terms of

the plea agreement permitted the Government to request an upward variance. Anderson

got his 120 month sentence because he deserved it under the facts of his case.

## CONCLUSION

For the foregoing reasons, this Court denies Anderson's § 2255 petition without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Anderson has not made a substantial showing of the denial of a federal constitutional right.

Dated this ____ day of August, 2021

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE